UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

5464 ROUTE 212, LLC and ROBERT DAY,

                           Plaintiffs,                1:19-cv-01510 (BKS/DJS)

v.

NEW YORK STATE DEPARTMENT OF
TRANSPORTATION, MARIE THERESE
DOMINGUEZ, *Individually and as Commissioner,
New York Department of Transportation*, and JOHN DOES
and JANE DOES, *Individually and as Officials and or
Agents of the New York State Department of
Transportation*,

                           Defendants.
_____

**Appearances:**

*For Plaintiffs:*
Wanda Sanchez Day
Law Offices of Wanda Sanchez Day
80-02 Kew Gardens Road
Kew Gardens, New York 11415

*For Defendants:*
Letitia James
Attorney General of the State of New York
Blaise W. Constantakes
Assistant Attorney General, of Counsel
The Capitol
Albany, New York 12224

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

      On December 2, 2019, Plaintiffs 5464 Route 212, LLC and Robert Day filed this action

under 42 U.S.C. § 1983 alleging that Defendants New York Department of Transportation

("DOT") and Marie Therese Dominguez took Plaintiffs' property without due process of law, in violation of the Fifth and Fourteenth Amendments of the United States Constitution. (Dkt. No. 1).[1] Presently before the Court is Plaintiffs' motion for a temporary restraining order ("TRO") and preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure seeking to enjoin Defendants from "unlawfully taking Plaintiffs' property without due process of law, without public purpose or just compensation." (Dkt. No. 10-4, at 4). The Court heard oral argument on the motion on April 3, 2020. Plaintiffs' motion for a TRO and a preliminary injunction is denied. The following constitutes the Court's findings of fact and conclusions of law in accordance with Rule 52(a)(2).

## II.   FINDINGS OF FACT[2]

At some point prior to 2018, DOT undertook a project entitled "Route 28 over the Eposus Creek, Hamlet of Mount Tremper, Town of Shandaken, Ulster County" (the "Project") in Ulster County, New York to address flooding that was impacting roadways and a bridge in the area. (Dkt. No. 16-8, ¶ 2). The property at issue in this case, 5464 Route 212 in Mount Tremper, New York (the "Property"), is located within the Project area and consists of ".43 acres of land with [a] 6 bedroom, 2 bath house." (Dkt. No. 10-1, ¶ 24). In her affirmation, Dawn Williams, DOT Regional Real Estate Officer, explains that "[t]he community and place in which the project is located was and continues to be severely impacted by historical storm events such as . . .

---

[1] Plaintiffs filed an amended complaint on April 3, 2020 which, inter alia, added John and Jane Doe defendants. (Dkt. No. 25).

[2] The facts are taken from the affidavits and attached exhibits submitted in support of this motion, (*see* Dkt. Nos. 1, 10-1 to 10-3, 10-5 to 10-12), and in opposition. (*See* Dkt. Nos. 16-1 to 16-6, 16-8 to 16-29). *See J.S.R. ex rel. J.S.G. v. Sessions*, 330 F. Supp. 3d 731, 738 (D. Conn. 2018) ("In deciding a motion for preliminary injunction, a court may consider the entire record including affidavits and other hearsay evidence."); *Fisher v. Goord*, 981 F. Supp. 140, 173 n.38 (W.D.N.Y. 1997) (noting that a "court has discretion on a preliminary injunction motion to consider affidavits as well as live testimony, given the necessity of a prompt decision"). The "findings are provisional in the sense that they are not binding on a motion for summary judgment or at trial and are subject to change as the litigation progresses." *trueEX, LLC v. MarkitSERV Ltd.*, 266 F. Supp. 3d 705, 721 (S.D.N.Y. 2017); *accord Fair Hous. in Huntington Comm. Inc. v. Town of Huntington*, 316 F.3d 357, 364 (2d Cir. 2003).

Tropical Storm Irene and Lee and other significant rain events and the neighborhood, including the subject property, have been flooded and damaged, some irreparably." (Dkt. No. 16-8, ¶ 5). In addition, according to Williams, "the integrity of the Route 28 bridge over Esopus Creek, which lies downstream of the Property, was deemed threatened." (*Id.*). "In high flow events like Tropical Storm Irene in 2011," the bridge was "forced to close" and the "topography of the area allowed for the water to escape the streambank channel," which "leads to Route 212 being inundated and closed." (*Id.* ¶ 6). Consequently, the Project is "of great important to secure the health, safety, and welfare of the Mt. Tremper community as well as the traveling public." (*Id.* ¶ 7). "[D]ue to the circumstances surrounding past flooding in the general area NYS Route 28 is deemed to be an 'Emergency Lifeline Corridor.'" (*Id.*). "The primary objective of the project is to improve the reliability of Route 28 as a lifeline corridor" by "reduc[ing] the likelihood that the bridge and the adjoining roadway will flood." (*Id.* ¶ 11). A "secondary project objective is to raise Route 212 above the 100-year storm level." (*Id.*). The total Project cost is projected to be $23,643,236. (*Id.* ¶ 9).

As part of the project, DOT identified 19 properties, including the Property, "to be acquired in some manner by DOT for construction of the project." (*Id.* ¶ 17). Kyle Steller had purchased the Property in 2016, (Dkt. No. 10-3, ¶ 3), and was the owner on February 1, 2018, when DOT "identified the [P]roperty . . . as a full acquisition." (Dkt. No. 16-8, ¶ 17). As part of the Project, the "profile of Route 212 and Route 28 will be raised, with the Route 212 elevation increasing approximately 10'" at the Property. (*Id.* ¶ 13). "Route 212 realignment will turn from its current alignment westerly towards Route 28 just south of" the Property and "[t]he toe of the slope for realigned Route 212 extends beyond limits of the house" located on the Property "well into the middle of the property." (*Id.*).

3

On May 14, 2018, "the Town of Shandaken conducted a public meeting inviting the property owners affected by the project to meet with DOT staff." (Dkt. No. 16-8, ¶ 18). During 2018, the New York City Department of Environmental Protection ("NYCDEP") offered Steller a buyout for the property under the NYCDEP Funded Flood Buyout ("FFBO") Program. (*Id.* ¶ 19). Steller did not accept. (*Id.*).

In October 2018, Steller engaged a real estate broker from Century 21 Real Estate to sell the property, because she "decided that the cost to raise[3] the existing structure" "exceeded [her] budget." (Dkt. No. 10-3, ¶ 4). The original asking price was $49,000. (Dkt. No. 10-1, ¶ 28). Plaintiff Robert Day "became aware that the subject property was for sale on Realtor.com." (*Id.*).

On February 12, 2019, NYCDEP informed DOT that Steller's property was listed for sale and that NYCDEP "had inquired with Ms. Steller as to why she was placing the property on the market with full knowledge that it would be demolished for the bridge project" but that Steller had "dismissed NYCDEP's concern and question." (Dkt. No. 16-8, ¶ 21; Dkt. No. 16-10, at 1). In emails between DOT and NYCDEP, DOT informed NYCDEP that it had mailed "an initial contact letter out [to Steller] with the acquisition map on January 10th, but never heard from [her]." (*Id.* at 2). The letter was not returned. (*Id.*). DOT had tried calling the number it had for Steller but "it just rings off the hook." (*Id.*). DOT also expressed that "[s]ince this is a full-take" they needed to get into contact with Steller and inquired whether NYCDEP had any additional contact information for Steller. (*Id.*).

Between January and February 2019, a Notice of Public Hearing was published in several local newspapers. (Dkt. No. 16-11). In her affirmation, Williams states that on February 21,

---

[3] It is not clear what Ms. Steller meant by "raise the existing structure," and whether she meant to write that she decided the cost to *raze* the existing structure exceeded her budget.

4

2019, Steller was mailed a notice for an EDPL Public Hearing related to the Project. (Dkt. No. 16-8, ¶ 22). Plaintiffs submitted a sworn affidavit from Steller, who states that she had "not ever received any notices from" or "been contacted by" the DOT in regards to the Property. (Dkt. No. 10-3, ¶¶ 7–8). The public hearing was conducted at the Shandaken Town Hall on March 12, 2019. (Dkt. No. 16-8, ¶ 23).

On March 28, 2019, Steller sold the property to Plaintiff 5464 Route 212, LLC for $25,000. (Dkt. No. 10-6, at 2; Dkt. No. 10-2, ¶ 29). Robert Day is the owner of 5464 Route 212, LLC. (Dkt. No. 10-2, ¶ 5). Since March 2019, Robert Day has been "physically occupying the subject premises" and began renovating the house. (*Id.* ¶ 9). He lived in an RV on the property. (*Id.* ¶ 10).

In April 2019, NYCDEP advised DOT that "it was no longer progressing buyout from Steller" because she had "cut off negotiations and wouldn't return NYCDEP calls." (Dkt. No. 16-8, ¶ 24).[4] Additionally, NYCDEP "was advised by Steller's realtor that Steller sold the property to Wanda Day and NYCDEP provided DOT with Ms. Day's phone number." (*Id.*). On April 16, 2019, "DOT made an initial contact call to Wanda Day and advised her of the Project." (*Id.* ¶ 25). On April 17, 2019, "DOT emailed Wanda Day requesting a meeting to discuss the project and appropriation process." (*Id.* ¶ 26). The email informed her that "the property [she] recently purchased from Kyle Steller in Mt. Tremper on Route 212 is being appropriated in full by" DOT. (Dkt. No. 16-13, at 1). On April 18, 2019, DOT emailed Wanda Day again, "requesting proof of her recorded deed as DOT had no documentation as to an owner other than Steller." (Dkt. No. 16-8, ¶ 27). Wanda Day replied that she would "check on deed recording." (Dkt. No. 16-14). Nothing in the record indicates that Wanda Day provided the DOT with

---

[4] Ms. Steller's affidavit does not address what, if any, communications she had with the NYCDEP. (Dkt. No. 10-3).

5

documentation as to the ownership of the property in April or May 2019. On April 22, "DOT received [an] email from Wanda Day requesting all project information. DOT responded by directing Ms. Day to [the] FOIL section of DOT website." (*Id.* ¶ 29). The next day, an "Initial Contact letter was mailed to Wanda Day." (*Id.* ¶ 30).

According to Williams, on May 17, 2019, DOT sent the "EDPL Findings and Determination Notice . . . to property owners of record, including Ms. Steller at last known address" in Millbrook, NY "as the owner of record of the subject project." (*Id.* ¶ 31; Dkt. No. 16-18, at 12). The Notice of Determination ("NOD") was also published in a local newspaper—the Daily Freeman—on May 22 and 23. (Dkt. No. 16-8, ¶ 32; Dkt. No. 16-19).

The deed for Plaintiff 5464 Route 212 LLCs' purchase of the Property "was filed with the Ulster County's clerk's office on May 30, 2019." (Dkt. No. 16-20). "On June 19, 2019 DOT mailed a letter to Wanda Day acknowledging [the] newly filed deed" and "requested a meeting with Ms. Day to discuss the coming appropriation." (Dkt. No. 16-8, ¶ 33; Dkt. No. 16-20). Specifically, DOT mailed a letter to 5464 Route 212, LLC c/o the Law Offices of Wanda Sanchez Day. (Dkt. No. 16-20). The letter stated that "[t]he acquisition of [the] property at 5464 Route 212 in Shandaken is a full acquisition," and requested the "opportunity to meet with you to explain the acquisition process and provide information on property owner's rights in New York State." (*Id.*). On July 1, 2019, "DOT received an email from Wanda Day acknowledging DOT's June 19 letter, stating that she wanted more information before scheduling a meeting." (Dkt. No. 16-8, ¶ 24; Dkt. No. 16-21). That same day, DOT emailed Wanda Day "providing [her] the contact information for the DOT FOIL officer, and again requesting a meeting at [the] site to discuss the appropriation process." (Dkt. No. 16-8, ¶ 35; Dkt. No. 16-22). The next day, DOT sent Wanda Day an email informing her that DOT had already "held a public meeting and

a public hearing in the Town Hall," and that DOT was "now beginning the property acquisition process for" the Project. (Dkt. No. 16-23). The emailed stated that "[t]he information [Wanda Day was] looking for is not available from this office, which is the Office of the Right-of-Way within the [DOT]. That is why we recommended [Wanda Day] file a FOIL request." (*Id.*).[5] On July 2, 2019, Ms. Day responded to this email stating that the Property "is owned by a corporation"; that she is "it's [sic] legal counsel"; and that DOT should reach out to her "in that capacity." (Dkt. 16-24).

On July 16, DOT sent a letter to Ms. Day explaining the denial of her FOIL request and Appeal," and informed her of "the availability of certain project information on [the] DOT website." (Dkt. No. 16-8, ¶ 38; Dkt. No. 16-26).

On October 4, 2019, "DOT sent their offer of compensation letter, advance payment agreement . . . [and] 90-day notice letter" to 5464 Route 212 LLC. (*Id.* ¶ 39). DOT offered Robert Day $11,000 "as payment in full for the property." (Dkt. No. 10-2, ¶ 54). On October 25, "DOT received an email from Wanda Day indicating [its] offer [of compensation was] too low." (Dkt. No. 16-8, ¶ 41). On November 26, "DOT emailed Wanda Day advising her that DOT was intending to vest soon and advising her that if the camper remains on the property, it would be subject to rental fees." (*Id.* ¶ 42). On November 29, DOT filed an appropriation map in Ulster County Clerk's Office, "transferring title to the property to New York State." (*Id.* ¶ 43). On February 13, 2020, DOT sent 5464 Route 212, LLC a "Notice to Quit" informing that it was required to vacate the property by February 29, 2020. (Dkt. No. 10-8).

---

[5] Defendants have not offered any explanation as to why they could not provide Plaintiffs the NOD at this time. However, the deadline to challenge the NOD elapsed on June 22–23, 2019, one month after its publication. *See* EDPL §§ 204(C), 207.

Bidding for the project opened on January 9, 2020, and the project was awarded to a contractor on February 27. (Dkt. No. 16-8, ¶¶ 44–45). According to DOT, "[c]osts to the public for any project delay would be substantial. Rough estimates of over $108,000 per month for delay have been developed." (*Id.* ¶ 10). In his affidavit in support of the motion for injunctive relief, Robert Day states that on or about February 27, 2020, DOT "entered on the land and razed trees that were hundreds of years old." (Dkt. No. 10-2, ¶ 17). "These trees provided protection and privacy to the house and were nesting sites for American Bald Eagles, brown bats and other endangered species." (*Id.* ¶ 18). Vegetation on the property was also destroyed. (*Id.* ¶ 19). In her affidavit Ms. Day states that DOT also "invaded Plaintiffs privacy by entering in the house where he kept personal belongings and illegally locked plaintiff out by padlocking and boarding the doors." (Dkt. No. 10-1, ¶ 12).

### III.     STANDARD OF REVIEW

Rule 65 of the Federal Rules of Civil Procedure governs temporary restraining orders and preliminary injunctions. In the Second Circuit, the standard for issuance of a temporary restraining order is the same as the standard for a preliminary injunction. *Fairfield Cty. Med. Ass'n v. United Healthcare of New Eng.*, 985 F. Supp. 2d 262, 270 (D. Conn. 2013), *aff'd*, 557 F. App'x 53 (2d Cir. 2014); *AFA Dispensing Grp. B.V. v. Anheuser–Busch, Inc.*, 740 F. Supp. 2d 465, 471 (S.D.N.Y. 2010) ("It is well established that the standard for an entry of a temporary restraining order is the same as for a preliminary injunction."). "A party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018).

## IV.   CONCLUSIONS OF LAW

### A.   Irreparable Harm

A showing of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)). "Irreparable harm is 'injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages.'" *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 660 (2d Cir. 2015) (quoting *Forest City Daly Hous., Inc. v. Town of North Hempstead*, 175 F.3d 144, 153 (2d Cir. 1999)).

Plaintiffs contend that the preliminary injunction should be granted because "it is well settled law in the Second Circuit . . . [that] the deprivation of an interest in real property constitutes irreparable harm." (Dkt. No. 24, at 3 (citing *Carpenter Technology Corp. v. City of Bridgeport*, 180 F.3d 93, 97 (2d Cir. 1999)). According to Defendants, Plaintiffs have failed to show they will suffer irreparable harm because their claims only entitle them to just compensation, because "the property in question ha[s] already been appropriated by the defendant DOT and title vested with the State." (Dkt. No. 16-7, at 8).

"The fact that the state has already taken title to the property at issue here does not necessarily undermine [Plaintiffs'] showing of irreparable harm." *Tioronda, LLC. v. New York*, 386 F. Supp. 2d 342, 350 (S.D.N.Y. 2005) (finding that the plaintiff demonstrated irreparable harm in a due process case regarding an eminent domain procedure even though the defendant contended that the taking had already occurred). Here, Plaintiffs claim that Defendants took the property without due process of law. If they succeed on their due process claim, they may be "entitled to a return of [the] property . . . if [they] can prove that any denial of due process made a difference in the condemnation proceedings." *Brody v. Vill. of Port Chester ("Brody IV")*, 345

F.3d 103, 120–21 (2d Cir. 2003).[6] The parties have not addressed whether any denial of due process made a difference in the proceedings. Plaintiffs acknowledge the limited scope of judicial review available under the New York State Eminent Domain Procedure ("EDPL") § 207(C), but assert that they could have challenged the taking as an "excess taking" or a "pretext taking," and also challenged the Defendants' compliance with the State Environmental Quality Review Act. (Dkt. No. 10-4, at 18–19). Defendants have not responded to this argument. However, even assuming that Plaintiffs have shown irreparable harm for their due process claim, injunctive relief is still not warranted for the reasons set forth below.

### B.      Likelihood of Success

#### 1.      Legal Standard

Generally, preliminary injunctions are prohibitory or mandatory. *N. Am. Soccer League*, 883 F.3d at 36. "Prohibitory injunctions maintain the status quo pending resolution of the case; mandatory injunctions alter it." *Id.* The "status quo . . . is, 'the last actual, peaceable uncontested status which preceded the pending controversy.'" *Id.* (quoting *Mastrio v. Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014)). A party seeking a mandatory injunction "must meet a heightened legal standard by showing 'a clear or substantial likelihood of success on the merits.'" *Id.* (quoting *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012)).

In this case, Plaintiffs contend that they are seeking to "maintain the status quo pending [the Court's] determination of the merits in this matter." (Dkt. No. 24, at 15). Plaintiffs thus argue that they only need demonstrate a "likelihood of success on the merits," (Dkt. No. 10-4, at 5), because the injunction would maintain rather than alter the status quo and thus would be prohibitory. Conversely, Defendants argue that because Plaintiffs are seeking to "alter, rather

---

[6] The Court follows the Second Circuit's reference to this *Brody* decision as "*Brody IV*" in light of the litigation history of that case.  *See Brody v. Village of Port Chester*, 434 F.3d 121, 125-26 (2d Cir. 2005).

10

than maintain the status quo, they must demonstrate a substantial likelihood of success on the merits." (Dkt. No. 16-7, at 7).

Here, the relevant status quo is the "last actual, peaceable uncontested status which preceded the pending controversy." *Mastrio*, 768 F.3d 120. Plaintiffs claim that their property was taken without due process of law. Thus, even though legal title has vested with the state, the last uncontested status occurred when Plaintiffs had ownership over the property. As such, Plaintiffs are not asking to change the relevant status quo, but to preserve it. Accordingly, they are asking for a prohibitory injunction and must only show a likelihood of success on the merits. *See Madej v. Yale Univ.*, No. 20-cv-133, 2020 WL 1614230, at *5, 2020 U.S. Dist. LEXIS 58651, at *14 (D. Conn. Mar. 31, 2020) (determining that, in a case where a student was expelled, the relevant status quo was "before Yale took the allegedly harmful actions" and so the plaintiff only needed to show a likelihood of success on the merits).

### 2. Analysis

"An essential principle of due process is that a deprivation of life, liberty, or property must 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Tioronda*, 386 F. Supp. 2d at 350 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965))). In the context of a taking, due process can be violated even when condemnors abide by the provisions of the EDPL. *Brody v. Vill. of Port Chester ("Brody V")*, 434 F.3d 121, 129 (2d Cir. 2005) ("[A] condemnor [who] provides an exclusive procedure for challenging a public use determination . . . must also provide notice in accordance with the rule established by *Mullane* and its progeny."). Specifically, *Mullane* requires that "notice be reasonably calculated, under all the circumstances,

11

to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. at 314. In the context of eminent domain, "due process requires the condemnor to give as much notice as is practicable in attempting to inform an affected property owner of a proceeding that threatens to deprive the owner of that property interest; however, beyond that, property owners are generally charged with knowledge of the laws relating to property ownership." *Brody V*, 434 F.3d at 132.

Plaintiffs allege that Defendants violated their due process rights by seeking to take their property without following the New York State Eminent Domain Procedure ("EDPL"). (Dkt. No. 1, ¶¶ 104–05). "Article 2 of New York's [EDPL] sets forth the procedures that most condemnors must follow prior to acquiring property." *Tioronda*, 386 F. Supp. 2d at 346. Condemnors must "hold a hearing to review the public use of the project and its impact on the environment." *Id.* (citing EDPL § 201). Comdemnors must "give notice to the public" about the hearing, and must send "a notice of the purpose, time, date, and location of a public hearing . . . to each assessment record billing owner." EDPL § 202. After the public hearing, condemnors must "publish their determination and findings" which "triggers an exclusive thirty-date period in which such determination and findings may be appealed." *Tioronda*, 386 F. Supp 2d at 246 (citing EDPL §§ 204, 207). Notice must be given to the "assessment record billing owner or his or her attorney of record whose property may be acquired."[7] EDPL § 204(C).

---

[7] EDPL § 204(C) states that "[u]pon making the determination and findings, the condemnor shall serve, by personal service or certified mail, return receipt requested, a notice of the brief synopsis thereof upon each assessment record billing owner or his or her attorney of record whose property may be acquired." This synopsis must include "the information required by paragraph two of subdivision (B) of this section," which requires (1) "the public use, benefit or purpose to be served by the proposed public project," (2) "the approximate location for the proposed public project and the reasons for the selection of that location," (3) "the general effect of the proposed project on the environment and residents of the locality," and (4) "such other factors considered relevant." *Id.* § 204(B), (C). Additionally, the notice must "state that copies of the determination and findings will be forwarded to such individuals upon written request and without cost," and inform individuals that "there are thirty days . . . to seek judicial review" and "the exclusive venue for judicial review . . . is the appellate division of the supreme court in the judicial district where any part of the property to be condemned is located." *Id.* § 204(C).

12

Plaintiffs allege that they have a likelihood of succeeding on the merits because "there is no dispute that Plaintiffs were entitled to receive a copy of the notice of determination dated May 2019 and did not actually receive it until late November 2019." (Dkt. No. 24, at 7).[8] However, while Plaintiffs purchased the property on March 28, 2019, (Dkt. No. 10-6), they did not record the deed until May 30, 2019. (Dkt. No. 16-20). Thus, the deed was not recorded until after the NOD was published in the local newspaper, (Dkt. No. 16-19), and mailed to the record property owners. (Dkt. No. 16-18). The EDPL requires condemnors to provide notice to the "assessment record billing owner."[9]  Neither of the parties have addressed the meaning of this term or how it applies to the facts of this case.  While 5464 Route 212, LLC was the property owner, the deed had not yet been recorded, and Ms. Day had not provided DOT with any documentation reflecting the change of ownership.  The owner of record was thus Kyle Steller.  Plaintiffs have not met their burden of demonstrating a likelihood of succeeding on the merits that Defendants violated their due process rights by failing to abide by the provisions of the EDPL.

Even if Defendants abided by the EDPL, Plaintiffs allege that their due process rights were violated because "both the opportunity to be heard and notice required by the state's [EDPL] are constitutionally deficient." (Dkt. No. 10-4, at 7). Specifically, Plaintiffs argue that because Defendants had "ample notice that Plaintiffs were the actual owners [of the property] since March 2019," the fact that Defendants did not provide them notice of determination violated their due process rights. (Dkt. No. 24, at 8). Plaintiffs claim that Defendants "prejudiced

---

[8] At oral argument, Plaintiffs admitted that they did not own the property when the public hearing took place in March 2019, and thus had no right to be notified of the public hearing.

[9] EDPL § 103(B-1) defines "assessment record billing owner" as "the owner, last known owner, or reputed owner, at such person's tax billing address, of each parcel or portion thereof, of real property which may be acquired by the condemnor for such public project, as shown on the assessment records of the political subdivision in which such parcel or portion thereof is located, as this information, in its most current form, may be obtained from and ascertained by the assessor of each such political subdivision."

13

plaintiff [sic] by reckless and willing failing [sic] to affording an opportunity to contest the NOD" because Defendants did not provide Plaintiff with a copy of the NOD until November 2019.[10] (Dkt. No. 24, at 8). According to Plaintiffs, Defendants knew Plaintiffs had "undisputed title" to the property since March 2019, and "actual notice of the owners of the subject property prior to the issuance of the NOD." (*Id.* at 8–9).

Despite these assertions, Plaintiffs have not offered evidence showing that Defendants had actual knowledge that Plaintiff *5464 Route 212 LLC, owned by Robert Day,* was the property owner prior to the issuance of the NOD. The parties have both offered evidence that, in April to May 2019, Defendants were notified that *Wanda Day* had purchased the property. Specifically, in April, Steller's real estate agent informed DOT that the property had been sold to Wanda Day. (Dkt. No. 16-8, ¶ 24). DOT reached out to Ms. Day and "advised her of the Project." (*Id.* ¶ 25). DOT notified Ms. Day in an email on April 17, 2019, that the DOT was appropriating the property "in full." (Dkt. No. 16-13). In that email, the DOT representative sought to meet to discuss "the appropriation, the timeline and the just compensation process." (Dkt. Nos. 16-13). The next day DOT sent an email to Ms. Day asking "for legal documentation indicating that you are the property owner," because the deed had not been filed and "DOT had no documentation as to an owner other than Steller." (*Id.* ¶ 27; Dkt. No. 16-14). Ms. Day responded that should would "check on deed recording," (Dkt. No. 16-14), but there is no evidence in the record that shows that Ms. Day or Plaintiffs provided any documentation to DOT reflecting the change of ownership. Rather, DOT became aware of the newly recorded deed for the property (and that

---

[10] In their reply, Plaintiffs additionally contend—for the first time—that Defendants committed a due process violation because "they ignored due process safeguards for condemnation of private property for federally funded projects found in 49 CFR 24.102(h)." (Dkt. No. 24, at 7). Given Defendants had no opportunity to respond, the Court does not consider this argument. *See Morgan v. McElroy*, 981 F. Supp. 873, 876 n.3 (S.D.N.Y. 1997) ("It is well settled in the Second Circuit that a party may not raise an argument for the first time in his reply brief.").

14

Plaintiff 5464 Route 212 LLC, owned by Robert Day, was the owner) sometime between the recording on May 30 and June 19. (*Id.* ¶ 33). Ms. Day informed DOT she was representing Plaintiffs on July 2, 2019, after the NOD had been mailed to property owners of record and published in the local newspapers. (*Id.* ¶¶ 33, 36).

Thus, at the time the NOD was mailed, on May 17, 2019, the deed had not been recorded, and the Defendants did not, contrary to Plaintiffs' assertion, have evidence that Plaintiffs were the owners of the property. Defendants responded to a report that that Ms. Day had purchased the property; notified Ms. Day in April 2019 that the property was being appropriated in full by the DOT; sought to meet with Ms. Day; and unsuccessfully sought documentation from Ms. Day regarding the record owner. It appears that Defendants complied with the EDPL by publishing the NOD in the local newspaper and mailing it to Steller—the owner of record. While due process may have required more if Defendants had actual knowledge that Plaintiffs were the legal owners of the property, on this record Plaintiffs has failed to meet their burden of establishing a likelihood of success on the merits of their due process claim.

### C. Balance of Hardships and Public Interest

"When confronted with a motion for a preliminary injunction, a court 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Main St. Baseball, LLC v. Binghamton Mets Baseball Club, Inc.*, 103 F. Supp. 3d 244, 262 (N.D.N.Y. 2015) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). Thus, even if the Court had found that Plaintiffs were likely to succeed on the merits, it "must consider the balance of hardships between the plaintiff and defendant and issue the injunction only if the balance of hardships tips in the plaintiff's favor." *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010). Additionally, "when a court orders injunctive relief, it should ensure that the injunction does not cause harm to the public interest." *Golden*

*Krust Patties, Inc. v. Bullock*, 957 F. Supp. 2d 186, 200 (E.D.N.Y. 2013) (quoting *U.S. S.E.C. v. Citigroup Glob. Markets Inc.*, 673 F.3d 158, 163 n.1 (2d Cir. 2012)).

Defendants argue that Plaintiffs "do not and cannot show that any injury they may have incurred outweighs the need, investment and public benefit" of the Project. (Dkt. No. 16-7, at 15). Defendants further argue that "even a minor delay in the Project at this point will have enormous financial consequences for the State" and that delaying the project would "put the local public at risk for further flooding damage." (*Id.*). Plaintiffs, conversely, argue that the balance of hardships weighs in their favor because there is a "public interest in protecting civil rights against government abuses" and Defendants' potential financial losses "are not grounds for the denial of a preliminary injunction." (Dkt. No. 24, at 3).

The balance of equities tips Defendants' favor. Defendants have invested both time and money in acquiring the local properties in order to complete the Project, and delays would cost an estimated $108,000 per month. (Dkt. No. 16-8, ¶ 10). Plaintiffs offer no caselaw to support their argument that the Court cannot consider financial hardship in balancing the equities.

Furthermore, the Court finds that it would not be in the public interest to grant the injunction. "Whenever a request for a preliminary injunction implicates public interests" a court must consider those interests because "a claim that appears meritorious at a preliminary stage but is ultimately determined to be unsuccessful will have precipitated court action that might needlessly have injured the public interest." *Brody v. Vill. of Port Chester ("Brody III")*, 261 F.3d 288, 290 (2d Cir. 2001) (quoting *Time Warner Cable v. Bloomberg, L.P.*, 118 F.3d 917, 929 (2d Cir. 1997)). Here, work has been underway on the Project, (Dkt. No. 16-8, ¶ 9), and a delay might "put the local public at risk for further flooding damage." (Dkt. No. 16-7, at 15). Thus, in

weighing the public interest in the Project against Plaintiffs' alleged deprivations, the Court declines to issue a preliminary injunction halting construction on the property.

## V. CONCLUSION

**ORDERED** that Plaintiffs' request for a TRO and preliminary injunction (Dkt. No. 10) is **DENIED**.

**IT IS SO ORDERED.**

Dated: April 16, 2020
Syracuse, New York

*Brenda K. Sannes*
Brenda K. Sannes
U.S. District Judge