**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

5465 ROUTE 212, LLC and ROBERT DAY,

                              Plaintiffs,                    1:19-cv-01510 (BKS/DJS)

v.

NEW YORK STATE DEPARTMENT OF
TRANSPORTATION, MARIE THERESE DOMINGUEZ,
*Individually and as Commissioner, New York Department
of Transportation,* and JOHN DOES and JANE DOES,
*Individually and as Officials and or Agents of the New York
State Department of Transportation.*

                              Defendants.

**Appearances:**

*For Plaintiffs:*
Wanda Sanchez Day
Law Offices of Wanda Sanchez Day
80-02 Kew Gardens Road
Kew Gardens, New York 11415

*For Defendants:*
Letitia James
Attorney General of the State of New York
Blaise W. Constantakes
Assistant Attorney General, of Counsel
The Capitol
Albany, New York 12224

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.      INTRODUCTION

Plaintiffs 5465 Route 212, LLC and Robert Day ("Plaintiffs") bring this action under 42

U.S.C. § 1983 and the New York State constitution against Defendants New York State

Department of Transportation ("DOT"), Commissioner of DOT Marie Therese Dominguez, and

John and Jane Does, alleging that Defendants improperly exercised their "power of eminent domain" to seize and condemn Plaintiffs' property for use as part of a public project to build a new bridge. (Dkt. No. 25, at 8). Plaintiffs allege: (1) violations of the Fourteenth Amendment right to equal protection and due process; (2) violations of the Fifth Amendment right to just compensation under the Takings Clause; (3) violations of the Fourth Amendment right against unlawful search and seizure; and (4) violations of their due process rights under the New York State Constitution. (Dkt. No. 25, at 25-27). Plaintiffs seek both monetary damages and injunctive relief. (*Id*. at 24). Presently before the Court is Defendants' motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 31). The parties have filed responsive papers. (Dkt. No. 31, 37, 38). For the reasons that follow, Defendants' motion is granted.

## II.    PROCEDURAL HISTORY

Plaintiffs brought this action on December 2, 2019, (Dkt. No. 1), and Defendants filed a motion to dismiss on February 17, 2020, (Dkt. No. 9). On March 2, 2020, Plaintiffs filed a motion for a temporary restraining order and a preliminary injunction seeking to enjoin Defendants from seizing Plaintiffs' property. (Dkt. Nos. 10, 11). Following oral argument on the motion, the Court denied Plaintiffs' request. *5464 Route 212, LLC v. New York State Department of Transportation*, No. 19-cv-1510, 220 WL 1888976, 2020 U.S. Dist. LEXIS 66905 (N.D.N.Y. April 16, 2020). Plaintiffs filed an amended complaint on April 3, 2020. (Dkt. No. 25). On April 23, 2020, Defendants filed, with the Court's leave, the pending amended motion to dismiss. (Dkt. No. 31).

**III.    FACTS[1]**

On March 28, 2019, Plaintiffs purchased property located at 5464 Route 212, Mt.

Tremper, New York ("the Premises") which included a six-bedroom house built in 1903. (Dkt.

No. 25, at ¶¶ 21, 224). Plaintiffs purchased the Premises from Kyle Steller for $25,000.00. (*Id*. ¶

42). The Premises had been "damaged by flooding during Hurricane Irene" and the house had

been "entirely gutted" when Plaintiffs purchased it. (*Id*. ¶¶ 45-46). After the purchase, "Plaintiffs

began the process of cleaning the surrounding grounds and the house on the property." (*Id*. ¶

109). Plaintiff Day purchased a Recreational Vehicle ("RV") to live in on the Premises. (*Id*. ¶

110). He used the Premises as his "residence" and received "mail" and "newspapers" at the

Premises' address. (*Id*. ¶ 111).

Prior to Plaintiffs' purchase of the property, the New York City Department of

Environmental Protection ("DEP") had approached Steller and offered to purchase the property,

(*id*. ¶ 40), and she rejected their "low offer," (*id*. ¶ 64). Defendants claimed the Premises were

needed for a federally-funded program called the Esopus Creek Bridge Project, which would

"raise Route 212 in order to alleviate flooding" of the road and build a new bridge. (*Id*. ¶¶ 70,

80-81, 153). Defendants sought to condemn the entire property for the project. (*Id*. ¶ 198).

 In February 2019, Defendants began "the process of condemnation of the properties on

Route 212" including the Premises. (*Id*. ¶ 41). Public hearings held by Defendants pursuant to

New York Eminent Domain Procedure Law occurred prior to Plaintiffs taking title to the

Premises. (*Id*. ¶¶ 49, 51). At a hearing, "DOT told residents on Route 212 and members of the

---

[1] The facts set forth herein are drawn from the amended complaint, a document integral to the complaint, and facts subject to judicial notice under Fed. R. Evid. 201. (Dkt. No. 25). The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

communities that were given actual notice that they would have access to their properties during the raising of Route 212." (*Id*. ¶ 52).

Defendants assert that notices of the public hearing were mailed to affected property owners, including Steller, in February 2019. (*Id*. ¶¶ 48, 54). Steller, however, was not served with notice of the public hearing at the Premises, and it is unclear "how Defendants delivered the [notice of public hearing] to Ms. Steller." (*Id*. ¶¶ 55-56). There is no evidence that Defendants served the notice of public hearing on Steller by return receipt or certified mail. The notice of public hearing was published in a local newspaper, but "review of the publications shows the properties were not identified by U.S. Postal service address." (*Id*. ¶¶ 59-60). During the two years Steller owned the Premises, only the DEP "sought to purchase the property from her, and she refused the low offer." (*Id.* ¶ 64). Defendants did not contact Steller about "condemnation of the property prior to the sale to Plaintiffs." (*Id*. ¶ 65).

Before purchasing the Premises, Plaintiffs "made every effort to obtain records about the property" including Freedom of Information Law ("FOIL") requests and a title search, but found "no evidence of any plans to condemn the subject property. (*Id.* ¶¶ 36-39). "There were no public documents available prior to the closing that would have placed Plaintiff[s] on notice that [Defendants] intended to take the property by eminent domain." (*Id*. ¶ 27). As a result, Plaintiffs purchased the Premises without knowledge that it was subject to condemnation by DOT. (*Id*. ¶ 35).

After Plaintiffs acquired title to the Premises, "DOT employees, agents, and or [sic] contractors proceeded at that time to wield the State of New York's power of eminent domain and specifically DOT authority under the EDPL and the Highway Law 130." (*Id*. ¶¶ 66, 68-69). DOT initially identified "more than ten properties on Route 212 for condemnation," of which

Plaintiffs' was the only one occupied by the owners. (*Id.* ¶¶ 75-76). Homeowners living on

Route 212 were assured by "Defendants' engineers" that "despite the fact that [Route 212] would

be raised, access into their homes would not be affected by the Esopus Creek Bridge Project."

(*Id.* ¶ 97). The homeowners who were afforded "the opportunity to be heard," either did not have

property taken, or only "a de minimums [sic] part of their properties taken by easement or simply

rented." (*Id.* ¶ 99). By contrast, property owners who were not "long-term" or "who purchased

without knowledge of the condemnation proceedings" were targeted for removal from their

property and harassed. (*Id.* ¶¶ 78-79). Ultimately, Plaintiffs, "who were denied access to the

public hearing records" were the only property owners to suffer "the loss of their property in its

entirety." (*Id.* ¶ 100).

  "On or about April 2019, after the closing took place," DOT informed Plaintiffs'

attorneys for the first time that DOT intended "to condemn the property." (*Id.* ¶ 107). DOT

called the "co-owner and attorney for Plaintiffs and stated that the property belonged to DOT."

(*Id.* ¶ 108). Defendants were aware that Plaintiff Day was living on the Premises in an RV and

using it as his address. (*Id.* ¶¶ 110-112). At some point, Defendants offered to pay Plaintiffs

"under $12,000.00" for the Premises, when "given its best use" it would sell for "over

$350,000.00." (*Id.* ¶ 163). Plaintiffs granted Defendants permission to appraise the property. (*Id.*

¶ 183).

  Defendants issued a Post-Public Hearing Notice of Determination ("NOD") in May

2019,[2] which contained "a synopsis of the determination and findings that have been made

Regarding the proposed project to replace the Route 28 over Esopus Creek bridge in the Hamlet

---

[2] The amended complaint refers to the issuing of "the notice of hearing (NOD) in May 2019," (*id.* ¶ 91), but this appears to be a typographical error, and "NOD" appears to reference the "Notice of Determination," (*id.* ¶ 93).

of Mt. Tremper, Town of Shandaken." (*Id*. at ¶¶ 91, 145). Plaintiffs were not served with the NOD at that time. (*Id*. ¶ 121). At the time Defendants issued the NOD, Plaintiffs' deed had not yet been recorded. (*Id*. ¶ 95).[3] However, Defendants nonetheless "were aware or should have been aware that Plaintiffs owned the subject property and that it was slotted for condemnation" because "there is no reasonable dispute that the seller, Ms. Steller, had already communicated the sale to Defendants in April 2019." (*Id*. ¶¶ 95-96). The NOD triggered a thirty-day period "within which an owner could contest the Defendants' public use determination in a judicial proceeding." (*Id*. ¶ 120). Plaintiffs attempted to obtain copies of the "public hearing records" and the NOD through FOIL requests to the "DOT Office of Right of Way and DOT" but were denied. (*Id*. ¶¶ 123-25). Defendants finally sent the NOD to Plaintiffs' attorneys in November of 2019. (*Id*. ¶ 131).

 "Defendants allege that on or about November 28, 2019, they completed the process of condemnation and in effect seized title from Plaintiffs by merely filing a copy of a map of the subject premises with the Ulster County Clerk's Office." (*Id*. ¶ 148). Plaintiffs allege that Defendants denied them due process "by deliberately withholding all information regarding the condemnation of their property and prohibiting Plaintiffs' participation and or ability to bring a judicial proceeding to contest their action. (*Id*. ¶ 149). Plaintiffs further allege that by withholding the NOD, the Defendants "denied Plaintiff an opportunity to contest the public use and just compensation in state court." (*Id*. ¶ 149). Plaintiffs assert that Defendants' offer to pay under $12,000 for the Premises is not just compensation. (*Id*. ¶¶ 163, 164).

Since December 2019, Defendants have "entered into Plaintiffs' land, destroyed Plaintiffs' property and trees" and "destroyed the vegetation and the nesting ground of American

---

[3] The deed was not recorded until May 30, 2019. (Dkt. No. 37-10; Dkt. No. 37-1).

Bald Eagles and other endangered species." (*Id*. ¶ 193). Defendants served Plaintiffs with a notice to vacate by February 29, 2020, but "entered the property and Plaintiffs' house, nailed DOT signs throughout the exterior of the properly . . . [and] bolted and boarded the doors" "on or before February 27, 2020." (*Id*. ¶ 194).

## IV.   LEGAL STANDARD

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140, at *5 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the amended complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## V.   DISCUSSION

### A.   Exhibits Submitted by the Parties

Both Plaintiffs and Defendants attach a number of exhibits in support of their motions. (*See* Dkt Nos. 31-3 to -7; 37-4 to -18). Thus, as a preliminary matter, the Court must decide which exhibits, if any, to consider in resolving this motion.

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). However, considering "materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion." *Id.* A complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Id.* (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks omitted)). Even where a document is deemed "'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Id.* (quoting *DiFolco*, 622 F.3d at 111). "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Id.* (quoting *Faulkner*, 463 F.3d at 134). "This principle is driven by a concern that a plaintiff may lack notice that the material will be considered to resolve factual matters." *Id.* Thus, "if material is not integral to or otherwise incorporated in the complaint, it may not be considered unless the motion to dismiss is converted to a motion for summary judgment and all parties are 'given a reasonable opportunity to present all the material that is pertinent to the motion.'" *Id.* (quoting Fed. R. Civ. P. 12(d)).

The amended complaint quotes extensively from the NOD, (Dkt. No. 25, at ¶ 154), and "relies heavily upon its terms and effect." *See Nicosia*, 834 F.3d at 230. Since Plaintiffs "obviously possessed [it] and relied on [it] in drafting" the amended complaint, the Court will

consider the NOD, which both parties submitted as an exhibit. (Dkt. No. 37-4; Dkt. No. 31-6). *See Routh v. Univ. of Rochester*, 981 F. Supp. 2d 184, 191 (W.D.N.Y. 2013).

The Court may take judicial notice of the following public records recorded in Ulster County which are relevant to the issues here: the deed for the premises, which was recorded in Ulster County on May 30, 2019, and submitted as an exhibit by both parties; and the Notice of Appropriation, recorded in Ulster County on November 29, 2019, and referenced in the amended complaint. (Dkt. No. 37-10; Dkt. No. 37-1; Dkt. No. 31-3; Dkt. No. 25, ¶ 148). *See* Fed. R. Evid. 201; *Gordon v. First Franklin Fin. Corp.*, No. 15-cv-0775, 2016 WL 792412, at *1 n.2, 2016 U.S. Dist. LEXIS 25621, at *2 n.2 (E.D.N.Y. Feb. 29, 2016). The Court also takes judicial notice of the New York Department of State public entity information regarding 5464 Route 212 LLC, submitted as an exhibit by Plaintiffs. (Dkt. No. 37-14). *See Maller v. Rite Aid Corp.*, No. 14-cv-0270, 2016 WL 1275628 at *3, 2016 U.S. Dist. LEXIS 43157, at *10 (N.D.N.Y. March 31, 2016).

Both Plaintiffs and Defendants also submitted additional exhibits.[4] However, the Court declines to consider the additional exhibits which were "'not attached to the complaint, w[ere] not incorporated by reference in the complaint,' and therefore 'w[ere] not integral to the complaint.'" *Jones v. Halstead Mgmt. Co.*, LLC, 81 F. Supp. 3d 324, 332 (S.D.N.Y. 2015) (quoting *DiFolco*, 622 F.3d at 113).

---

[4] Plaintiffs' additional exhibits include: e-mail exchanges with DOT employees, (Dkt. Nos. 37-5 to -8, 37-11 to-13); other records of communication with DOT employees, (Dkt. Nos. 37-9, 37-15); a map of the Premises, (Dkt. No. 37-16); a copy of New York State trial court COVID-19 protocols, (Dkt. No. 37-17); and a copy of New York State Executive Order No. 202.8, (Dkt. No. 37-18). Defendants also submitted photos of the Premises, (Dkt. Nos. 31-4-31-5).

**B.**      **Section 1983 Claims Against DOT and Dominguez in Her Official Capacity**

      **1.**      **Money Damages Claims**

Defendants argue that all claims for money damages against DOT and Dominguez in her official capacity must be dismissed because the Eleventh Amendment "bars suits against New York State unless it has consented to be sued, or federal legislation has overridden the State's sovereign immunity," and "this immunity also extends to state officers sued in their official capacity." (Dkt. No. 31-8, at 5). The Court agrees.

Under the Eleventh Amendment, the State, including its agents and instrumentalities, is absolutely immune from being sued, unless it consents or federal law provides otherwise. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). "It is well-established that New York has not consented to § 1983 suits in federal court, and that § 1983 was not intended to override a state's sovereign immunity." *Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010) (internal citations omitted). This immunity extends to State officials acting in their official capacities. *Will*, 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.").

Plaintiffs do not dispute the fact that state sovereignty precludes money damages in § 1983 cases based on violations of the Fourteenth or Fourth Amendments, but argue that it should not apply in "Takings Clause lawsuits." (Dkt. No. 37-1, at 20). Plaintiffs argue that the "Supreme Court has never addressed the applicability of Eleventh Amendment immunity to Takings Clause claims filed against States" and "[s]ubstantial scholarship supports the view that the Eleventh Amendment is inapplicable to such claims." (Dkt. No. 37-1, at 19).

A district court in the United States District Court for the Eastern District of New York has recently considered, and rejected, this argument. The court noted that while "neither the Supreme Court nor the Second Circuit has decisively resolved" whether the Eleventh

Amendment immunizes a state agency from a takings claim brought in federal court, "[t]he overwhelming weight of authority among the circuits" is that "sovereign immunity trumps the Takings Clause – at least where . . . the state provides a remedy of its own for an alleged violation." *Cmty. Hous. Improvement Program v. City of New York*, No. 19-cv-4087, 2020 WL 5819900, at * 3, 2020 U.S. LEXIS 181189, at *10 (E.D.N.Y. Sept. 30, 2020). The court noted that the Second Circuit "recently affirmed a decision that held the Eleventh Amendment to bar a takings claim, but in a non-precedential summary order that did not analyze the question in detail." *Id*. (citing *Morabito v. New York*, 803 F. App'x 463, 464-65 (2d Cir. 2020)) (summary order) (affirming dismissal of Takings Clause claim against New York, a state agency and state official in his official capacity because the Eleventh Amendment "generally bars suits in federal courts by private individuals against non-consenting states"), *aff'g* No. 17-cv-6853, 2018 WL 3023380, 2018 U.S. Dist. LEXIS 101502 (W.D.N.Y. June 18, 2018). The Eastern District of New York court concluded that sovereign immunity barred a money damages takings claim against New York, a state agency and a state official in his official capacity. *Cmty. Hous. Improvement Program*, 2020 WL 5819900 at *4, 2020 U.S. LEXIS 181189, at *14-15. Other district courts within the Circuit have issued similar rulings. *See MPHJ Tech. Invs., LLC v. Sorrell*, 108 F. Supp. 3d 231, 242 (D. Vt. 2015) (ruling that "to the extent [Plaintiff] is seeking damages under the Takings Clause, its claim against the Attorney General in his official capacity is barred by the Eleventh Amendment); *Gebman v. New York*, No. 07-cv-1226, 2008 WL 2433693, at *4, 2008 U.S. Dist. LEXIS 46125, at *11-12 (June 12, 2008) (ruling that the Eleventh Amendment bars § 1983 due process and regulatory takings claims against the State).

This Court agrees and declines to rule, absent any persuasive authority,[5] that a Takings Clause claim abrogates Eleventh Amendment state sovereign immunity. Therefore, all of Plaintiffs' § 1983 claims against DOT for monetary relief and against Dominguez in her official capacity for monetary relief must be dismissed because they are barred by the Eleventh Amendment. [6]

## 2.    Prospective Relief

A limited exception to state sovereign immunity exists when a plaintiff sues a state official acting in his or her official capacity and seeks "prospective relief based on an 'ongoing violation of federal law.'" *Verizon Md. Inc. v. PSC*, 535 U.S. 635, 643-45 (2002) (citing *Ex parte Young*, 209 U.S. 123 (1908)). To determine "whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md. Inc.*, 535 U.S. at 645 (citing *Idaho v. Coeur D'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment)). Defendants argue that the *Ex parte Young* doctrine's narrow exception to Eleventh Amendment sovereignty does not apply because "all of the allegations regarding Section 1983 violations are based upon State Defendants' alleged prior conduct" and "Plaintiffs' prayer for relief is retrospective in nature." (Dkt. No. 38, at 6).

---

[5] Plaintiffs did not provide the "substantial scholarship" that they allege supports their view. (Dkt. No. 37-1, at 19). Nor did they provide governing caselaw, or even caselaw within the Second Circuit, rejecting a state's claim of Eleventh Amendment immunity as to a federal takings claim.

[6] Defendants also argue that DOT is not a proper defendant under § 1983 because DOT is not a "person" within the meaning of § 1983. (Dkt. No. 31-8, at 4). The Court agrees. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that a State is not a "person" under § 1983); *see also Spencer v. Doe*, 139 F.3d 107, 111 (2d Cir. 1998) ("Neither a state nor one of its agencies nor an official of that agency sued in his or her official capacity is a 'person' under § 1983.").

Plaintiffs seek an injunction "restraining Defendants from violating Plaintiffs' Fourth, Fifth and Fourteenth Amendment" rights, asserting three allegations of prior conduct: "Defendants condemned, entered upon, unlawfully locked Plaintiffs out and begun to destroy Plaintiffs' property"; "Defendants condemned and beg[a]n to destroy Plaintiffs' property without affording Plaintiffs due process of law"; and "Defendants' [sic] have taken Plaintiffs' private property without just compensation." (Dkt. No. 25, at ¶ 228). Although Plaintiffs also "seek to enjoin Defendants from unlawfully taking Plaintiffs' property without due process of law," (*Id.* at 24), the amended complaint alleges that Defendants "seized title from Plaintiffs" "on or about November 28, 2019." (*Id.* ¶ 148). Plaintiffs allege that they have "suffered the loss of their property in its entirety." (*id.* ¶ 100). *See*, *e.g.*, New York State Eminent Domain Procedure § 402(A)(3) (providing that title to property vests in the state upon the filing of a certified copy of an acquisition map in the office of the county clerk); Dkt. No. 31-3 (Ulster County Clerk's certificate of filing of acquisition maps on November 29, 2019).

Plaintiffs filed this action on December 2, 2019, after the taking had occurred, (Dkt. No. 1), and alleges violations that have already occurred, without allegations of any *ongoing* violations of federal law necessary under the *Ex parte Young* doctrine. *See Triestman v. McGinty*, 804 F. App'x 98, 100 (2d Cir. 2020) (holding Eleventh Amendment barred allegations of due process violations in connection with past family court custody proceedings because the plaintiff "did not allege any facts that plausibly showed (1) future proceedings would likely occur and (2) that such proceedings would be accompanied by any due process violations"). While Plaintiff's amended complaint alleges that Defendants "entered into Plaintiffs' land," "destroyed Plaintiffs' property," and "bolted and boarded the doors" since the filing of this action, (Dkt. No. 25, at ¶¶ 193-94), these are not "ongoing" violations of law, and use of the

property by the state is "a by-product" of the prior alleged violations. *Nat'l R.R. Passenger Corp. v. McDonald*, 978 F. Supp. 2d 215, 230 (S.D.N.Y. 2013) (holding that neither "the takings, which occurred almost four years before Amtrak filed its complaint in this action," nor "any actions by the Commissioner to enter or build on the property" constitute an "ongoing violation of federal law" because "[a]ny use of the property by the state, its present record owner, is simply a by-product of the taking itself").

While Plaintiffs appear to also seek declaratory relief, "[d]eclaratory relief that relates solely to a past violation of federal law, and has the effect of imposing a monetary loss or requiring restitution by the state for a past breach of a legal duty, is barred by the Eleventh Amendment." *Nat'l R.R. Passenger Corp.*, 978 F. Supp. 2d at 229 (citing *Verizon Md. Inc.*, 535 U.S. at 646) (holding that "a declaration that the taking was null and void is wholly retrospective").

The relief Plaintiffs seeks is thus retrospective. "The line between prospective and retrospective relief is drawn because 'remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law,' whereas 'compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment.'" *Ward v. Thomas*, 207 F.3d 114, 119 (2d Cir. 2000) (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)). Therefore, Plaintiffs' §1983 claims seeking injunctive relief against Dominguez or any state officials in their official capacity are also barred by the Eleventh Amendment and must be dismissed.

**C.     Section 1983 Claims Against Defendants in Their Individual Capacities**

**1.     Dominguez**

Defendants argue that Plaintiffs "have failed to assert" "any evidence that Commissioner Dominguez had any personal involvement in the actions that form the basis of the complaint or

amended complaint." (Dkt. No. 31-8, at 6). "It is well settled that, in order to establish a

defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia,

the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City*

*of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). The Second Circuit has held that personal

involvement of a supervisory defendant may be shown in several ways. In addition to (1) direct

participation, a plaintiff may show that:

> (2) the defendant, after being informed of the violation through a
> report or appeal, failed to remedy the wrong, (3) the defendant
> created a policy or custom under which unconstitutional practices
> occurred, or allowed the continuance of such a policy or custom, (4)
> the defendant was grossly negligent in supervising subordinates who
> committed the wrongful acts, or (5) the defendant exhibited
> deliberate indifference to the [constitutional] rights . . . by failing to
> act on information indicating that unconstitutional acts were
> occurring

(the "*Colon* factors"). *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quoting *Williams v.*

*Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)). "[A] defendant in a § 1983 action may not be held

liable for damages for constitutional violations merely because he held a high position of

authority." *Id*.

The amended complaint does not contain factual allegations from which the Court could

plausibly infer Dominguez's personal involvement in decisions that allegedly violated Plaintiffs'

rights. For the purpose of this discussion, the Court has considered whether the Plaintiffs have

plausibly alleged Dominguez's personal liability with respect to Plaintiffs' due process claim,

including their claim that Defendants failed to provide Plaintiffs with the NOD in time to file an

action in state court objecting to the condemnation, Plaintiffs' takings claim, and Plaintiffs'

Fourth Amendment claim regarding Defendants' alleged conduct in entering her property.[7]

---

[7] The Court has not discerned an equal protection claim that could be considered in this analysis. There is no allegation
of selective treatment based on an impermissible consideration or that Plaintiffs were intentionally treated differently

Plaintiffs do not allege any act that involved Dominguez's "direct participation," but rather allege Dominguez's personal involvement under multiple theories tied to her role as a DOT supervisor. Plaintiffs allege that because Dominguez is the head of DOT, and "[g]iven the enormous financial costs and social disruption caused by the Esposus Creek Bridge Project" and "years DOT alleges they have spent on coordinating this project, it is reasonable to infer that Defendant Dominguez had personal knowledge of the fact that her subordinates and or [sic] agents were violating Plaintiffs' rights." (*Id*. ¶¶ 186, 188). This is insufficient to infer Doninguez's personal involvement in the alleged constitutional violations. Dismissal is appropriate when a Plaintiffs' allegations "do no more than allege that [the defendant] was in charge of [an agency]." *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987).

Plaintiffs allege that Dominguez became aware of her "co-Defendants' unlawful conduct" as of "at least January 2020, with service of Plaintiffs' first Verified Complaint." (Dkt. No. 25, at ¶ 189). Plaintiffs further allege that "[a]ssuming she did not order the unlawful conduct, she failed to investigate and or [sic] put a stop to the ongoing violations." (*Id.* ¶ 190). However, "[a]fter the fact notice of a violation . . . is insufficient to establish a supervisor's liability for the violation." *Rahman v. Fisher*, 607 F. Supp. 2d, 580, 585 (S.D.N.Y. 2009). "[A] supervisor may be liable for her failure to remedy a violation only in those circumstances where the violation is ongoing and the defendant has an opportunity to stop the violation after being informed of it." *Id*. Here, Plaintiffs allege Dominguez had notice as of "at least January 2020," (Dkt. No. 25, at ¶ 189), *after* the alleged violations had occurred; Plaintiffs have not alleged that Dominguez had notice of any ongoing violations which would have afforded her the opportunity

---

from others similarly situated with no rational basis. *See, e.g.*, *Essex One, LLC v. Town of Essex-Town of Essex Planning Board*, No. 20-cv-119, 2020 WL 4924576, at *11, 2020 U.S. Dist. LEXIS 151553, at *29-30 (N.D.N.Y. Aug. 21, 2020).

to investigate or halt them, and therefore has failed to plausibly allege her personal involvement

under that theory. *Luck v. Westchester Med. Ctr.*, No. 17-cv-9110, 2020 WL 564635, at *11,

2020 U.S. Dist. LEXIS 18988, at *28 (S.D.N.Y. Feb. 4, 2020) (holding that failure to investigate

allegations about conduct that had already occurred were insufficient to show personal

involvement because the complaint did not plausibly allege that defendant had the ability to

"remedy the wrong."); *Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008) (noting that

"[i]f the official is confronted with a violation that has already occurred and is not ongoing, then

the official will not be found personally responsible for failing to 'remedy' a violation.").

   Plaintiffs allege that "[b]y failing to monitor from that point the acts of her subordinate,

[Dominguez] is deemed to have also ratified or consented to the prior bad acts," and that "a

review of the issues would have indicated to Defendant Dominguez that DOT employees had

proceeded to condemn without authority." (*Id*. ¶¶ 191-92). Plaintiffs argue that Dominguez

"ratified the prior acts by failing to intervene," and "condoned and approved the continuing

violations of plaintiffs' constitutional rights when her agents and employees subsequently in

February 2020 unlawfully trespassed upon plaintiffs' land, illegal [sic] locked Plaintiffs out."

(Dkt. No. 37-1, at 19). However, conclusory allegations that Dominguez "ratified or consented to

the prior bad acts," are insufficient to allege personal involvement. *Capogrosso v. Gelbstein*, No.

18-cv-2710, 2019 WL 6406444, at *7, 2019 U.S. Dist. LEXIS 15867, at *19 (E.D.N.Y. Jan. 30,

2019) (finding allegation that the defendant "acted with 'deliberate indifference and/or condoned

and ratified said unconstitutional acts'" was insufficient to show personal involvement), *report*

*and recommendation adopted*, 2019 WL 4686448, 2019 U.S. Dist. LEXIS 165585 (E.D.N.Y.

Sept. 25, 2019); *Manswell v. United States*, No. 09-cv-4102, 2010 WL 3219156, at *4, 2010 U.S.

Dist. LEXIS 82788, at *12 (S.D.N.Y. Aug. 9, 2010) (holding that allegations that the defendants

"authorized, condoned and/or ratified" the alleged violations are conclusory and without

"sufficient factual matter so as to render them plausible").

Plaintiffs allege that Dominguez "fail[ed] to monitor" her subordinates because "a review

of the issues" that DOT employees "had proceeded to condemn without authority," "entered into

Plaintiffs' land" and "destroyed Plaintiffs' property" in January of 2020, and "entered the

property and Plaintiffs' house . . . without a warrant" "on or before February 27, 2020." (*Id*. ¶¶

191-94). However, "'vague and conclusory allegations that a supervisor negligently failed

to…supervise 'subordinate employees' are not sufficient to establish personal involvement so as

to give rise to personal liability." *McRae v. Gentile*, No. 14-cv-783, 2015 WL 7292875, at *5,

2015 U.S. Dist. LEXIS 155684, at *14 (N.D.N.Y. Oct. 20, 2015); *see also Pettus v. Morgenthau*,

554 F.3d 293, 300 (2d Cir. 2009). Because Plaintiff's allegations fail to plausibly allege

Dominguez's personal involvement in the alleged constitutional violations, Plaintiffs' claims

under §1983 against Dominguez in her individual capacity must be dismissed.

### 2.    Doe Defendants

Although the New York State Attorney General appears on behalf of the named

Defendants, and not the Doe Defendants, she seeks dismissal of the amended complaint "in its

entirety." (Dkt. No. 31-8, at 4, 14). The Court thus considers the viability of claims against the

Doe Defendants. *See Case v. Anderson*, No. 16-cv-983, 2017 WL 11557458, at *2, 2017 U.S.

Dist. LEXIS 147647, at *5-6 (S.D.N.Y. Sept. 11, 2017).

Plaintiffs make a single allegation in their amended complaint concerning the Doe

Defendants: that "Defendants 'John Does' and 'Jane Does' are officers, managers, agents,

servants, and or employees who acted alone and or [sic] in collusion with Defendant Dominguez

and other named and unnamed Defendants and committed such acts or omissions Plaintiffs

complain of in this lawsuit." (Dkt. No. 25, at 3). There are no specific factual allegations of any

actions committed by any Doe Defendants. The amended complaint fails to differentiate among the defendants, instead alleging acts by "the defendants." "Because the personal involvement of a defendant is a prerequisite to an award of damages under § 1983, a plaintiff cannot rely on a group pleading against all defendants without making specific individual factual allegations." *Spring v. Allegany-Limestone Cent. Sch. Dist.*, 138 F. Supp. 3d 282, 293 (W.D.N.Y. 2015), *vacated in part on other grounds*, 655 F. App'x 25 (2d Cir. 2016). This type of group pleading is insufficient to allege personal involvement. *See Thomas v. Venditto*, 925 F. Supp. 2d 352, 363 (E.D.N.Y. 2013) (holding that where the only allegation in the complaint of misconduct by defendants was a paragraph asserting that "the allegations are made against all defendants," dismissal of the § 1983 claims was warranted because the plaintiff could not "rely on group pleading against [the defendants] without making specific factual allegations [against them]"); *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (explaining that "lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct" fails to satisfy minimum "fair notice" standard of Fed. R. Civ. P. 8). For these reasons, the Court exercises its "inherent authority to dismiss meritless claims *sua sponte*," *Lanausse v. City of New York*, No. 15-cv-1652, 2016 WL 2851337, at *2, 2016 U.S. Dist. LEXIS 63414, *4 (S.D.N.Y. May 13, 2016) (citing *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000)), and dismisses the claims under § 1983 against the Doe Defendants in their individual capacities.

### D.     State Claims

Having dismissed Plaintiffs' federal claims, the Court declines, in its discretion, to retain supplemental jurisdiction over Plaintiffs' state-law claims. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the

pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."). As the federal claims have been dismissed prior to the investment of significant judicial resources, the "traditional 'values of judicial economy, convenience, fairness and comity'" weigh in favor of declining to exercise supplemental jurisdiction. *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Cohill*, 484 U.S. at 350).

### E.   Leave to Amend

Plaintiffs have not requested leave to file a second amended complaint in the event Defendants' motion is granted. Plaintiffs have already amended their complaint once in response to defendants' initial motion to dismiss, and the Court declines to *sua sponte* grant leave to amend. *See Bonn-Wittingham v. Project OHR, Inc.*, 792 F. App'x 71, 75 (2d Cir. 2019) ("[W]e will not deem it an abuse of the district court's discretion to order a case closed when leave to amend has not been sought.") (quoting *Anatian v. Coutts Bank (Switz.) Ltd.*, 193 F.3d 85, 89 (2d Cir. 1999)); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) ("The [plaintiff's] contention that the District Court abused its discretion in not permitting an amendment that was never requested is frivolous.").

## VI.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's amended motion to dismiss (Dkt. No. 31) is **GRANTED** in its entirety; and it is further

**ORDERED** that Plaintiffs' § 1983 claims for violations of the Fifth, Fourteenth, and Fourth Amendments against DOT, and against Dominguez and the Doe Defendants in their official capacity, are **DISMISSED without prejudice**, and without leave to amend, for lack of subject matter jurisdiction; and it is further

**ORDERED** that Plaintiffs' § 1983 claims for violations of the Fifth, Fourteenth, and Fourth Amendments against Dominguez and the Doe Defendants in their individual capacities are **DISMISSED without prejudice**; and it is further

**ORDERED** that Plaintiffs' state law claims are **DISMISSED without prejudice** to refiling in state court; and it is further

**ORDERED** that the Amended Complaint (Dkt. No. 25) is **DISMISSED without prejudice** and the Clerk is directed to close this case and enter Judgment accordingly.

**IT IS SO ORDERED.**

Dated: November 24, 2020
      Syracuse, New York

Brenda K. Sannes
U.S. District Judge